Per Curiam.

The relator contends, first, that the respondent had no right to cast the deciding tie-breaking vote that resulted in the demotion of the relator.
Section 731.09, Eevised Code, provides that “the legislative power of each village shall be vested in, and exercised by, a legislative authority, composed of six members, who shall be elected by the electors of the village at large, for terms of two years.”
The members of the General Assembly were undoubtedly aware that in a six-member village council the probability of a tie vote is an ever-present potential. Consequently, they provided in the last sentence of Section 733.24, Eevised Code, which section sets out the powers and duties of the mayor of a village, that “he shall be the president of the legislative authority and shall preside at all regular and special meetings thereof, but shall have no vote except in case of a tie.”
Eelator argues that, since Sections 737.15, 737.16 and 737.17, Eevised Code, hereinafter quoted, deal especially with chiefs of police and patrolmen of a village, those sections must control over the general statute, Section 733.24, Eevised Code, which gives a village mayor a general power to vote in case of a tie.
We can not agree that any one of these sections of the Code dealing with the organization, officers and public safety features of villages must be applied to the exclusion of all others. In *378 Sections 731.09, dealing with organization, 733.24, dealing with the powers of the mayor, and 737.17, dealing with the appointment of a chief of police, we find the words, “legislative authority,” recurring. These sections must be read and construed as being in pari materia. The only result from such a reading is that the mayor of a village is authorized to cast a tie-breaking vote in the village council.
It may be argued with considerable force that such an interpretation creates, in effect, a seven-member council instead of six-member council as provided by the General Assembly. And it is certainly true that under such interpretation the mayor’s vote becomes the controlling one on a matter, such as the hiring or firing of a policeman or police chief, which he himself has proposed and on which the members of council are evenly divided. However, such a result is one clearly provided by the words of the General Assembly, and one which, if not intended, should be changed by the General Assembly.
More serious questions arise, however, in the interpretation of Sections 737.15, 737.16 and 737.17, Bevised Code. These sections read, so far as pertinent, as follows:
Section 737.15. “Each village shall have a marshal, designated chief of police, appointed by the mayor with the advice and consent of the legislative authority of the village, who is an elector thereof, and who shall continue in office until removed therefrom as provided by Sections 733.35 to 733.39, inclusive, of the Bevised Code.”
Section 737.16. “The mayor shall, when provided for by the legislative authority of a village, and subject to its confirmation, appoint all deputy marshals, policemen, night watchmen, and special policemen. All such officers shall continue in office until removed therefrom for the cause and in the manner provided by Section 737.15 of the Bevised Code.”
Section 737.17. “All appointments made under Sections 737.15 and 737.16 of the Bevised Code shall be for a probationary period of six months’ continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village *379 a record of such employee’s service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.”
It is argued by relator that when a patrolman of a village has been appointed, has served his probationary period and has been permanently hired as a patrolman, it is not necessary for him to again serve a six-month probation if he is promoted to the position of chief of police. The argument thus made is a logical one when considered in the light of Section 143.34, Be-vised Code, which provides among other things that all vacancies above the rank of patrolman in a police department required to operate under the civil service laws shall be filled by promotion from among persons holding positions in a rank lower than the position to be filled.
However, mandatory compliance with the civil service laws is one of the ways in which the General Assembly has differentiated between cities and villages. Thus it is provided that the police and fire departments in every city shall be maintained under the civil service system. (Section 737.11, Bevised Code.) There is no such requirement in the statutes pertaining to villages.
Section 737.17, Bevised Code, clearly provides that all appointments of marshals, chiefs of police and patrolmen of villages shall be on a probationary basis, and had the General Assembly intended to exempt a person promoted from patrolman to chief from such probationary service, it could very easily have done so.
It is conceded that no mayor of the village of Hubbard has recommended the permanent appointment of the relator as chief of police, although it is obvious from the mandatory words of Section 737.17, Bevised Code, that the record of the relator during the probationary period should have been transmitted to the council at the end of six months ’ employment as chief of police.
If the word, “record,” as used in Section 737.17, Bevised Code, is given the meaning, contended for by the relator, that it is “a written memorial made by a public officer authorized by law to perform that function, the memorial being intended to serve as evidence of something written, said, or done,” it might *380 with more reason he said that what the respondent stated to council and what was made a part of council minutes is not a “record.”
However, we do not ascribe that meaning to the word as used by the General Assembly. We believe the “record” referred to here is “the sum of the acts and attitudes of a person.” Webster’s New International Dictionary (2 Ed.) defines the word as “the known facts-in the course of anything, as in a public man’s career. ” Although concededly done very informally, the respondent did outline to the members of council the acts and the attitudes of the chief of police. He outlined what he knew of the facts in the career of the chief and concluded with a recommendation that relator not be appointed as chief of police. In so doing, respondent complied with the provisions of Section 737.17, Revised Code.
It is perhaps unfortunate that the sections of the Code dealing with village government do not spell out with greater particularity the provisions for the organization of the various departments of village government and the powers and duties of the various officials therein. This would, of course, be most helpful for those villages which approach in population a size which makes them almost cities. But such municipal corporations have available to them the optional plans provided in the Constitution and in Chapter 705, Revised Code, and can, within permissible limits, establish their own form of government.
For those which do not and which elect to remain within the general framework of village government as provided by the general statutes, the General Assembly has established a simple form of government which in large measure revolves around the village mayor. As pointed out, he is, or at times may be, virtually a seventh member of council. That it was intended that the mayor exert a potent force in all police matters in a village is further evidenced by the provision in Section 737.18, • Revised Code, that “the marshal shall be the peace officer of a village and the executive head, under the mayor, of the police force.”
The relator, never having been recommended for permanent appointment as chief of police, has not shown a clear right *381 to the extraordinary remedy of mandamus, and the Court of Appeals properly denied the writ.

Judgment affirmed.

Weygandt, C. «7., Zimmerman, Taft, Matthias, Bell, Herbert and Peck, JJ., concur.